JOHNSON, J. (concurring)
¶ 71 The issue presented in this case is whether the federal attenuation doctrine is compatible with our state constitutional principles recognized under article I, section 7 of the Washington Constitution. Our cases interpreting article I, section 7 have rejected the federal good faith exception doctrine and the federal inevitable discovery doctrine, and applying the same reasoning, the federal attenuation doctrine should be rejected based on our state constitution's stronger privacy protections and the narrower exceptions to individual constitutional privacy protections.
¶ 72 Although the majority reaches the correct result, it errs in its reasoning. In addressing the state constitutional issue, the majority correctly recognizes that a Gunwall[1] factored argument is unnecessary. As correctly noted in the Court of Appeals' dissent, "A Gunwall analysis is not required *903 every time article I, section 7 is applied in a new context. Instead, the court acknowledges that article I, section 7 generally is more protective and then engages in a conventional legal analysis to determine its scope and effect in the circumstances presented." State v. Mayfield, No. 48800-1-II, slip op. at 14, 2018 WL 286810 (Wash. Ct. App. Jan. 4, 2018) (unpublished), http://www.courts.wa.gov/opinions/pdf/D2%2048800-1-II%20Unpublished%20Opinion.pdf (Bjorgen, C.J., dissenting).
¶ 73 The United States Supreme Court established a closely related subset of exceptions to the exclusionary rule under the Fourth Amendment to the United States Constitution. Those include the good faith exception, the inevitable discovery doctrine, and the attenuation doctrine. Our cases analyzing article I, section 7 have addressed these exceptions.
¶ 74 In State v. Afana, 169 Wash.2d 169, 184, 233 P.3d 879 (2010), we rejected the federal good faith exception doctrine. In doing so, we recognized, "In contrast to the Fourth Amendment, article I, section 7 emphasizes 'protecting personal rights rather than ... curbing governmental actions.' " Afana, 169 Wash.2d at 180, 233 P.3d 879 (alteration in original) (quoting State v. White, 97 Wash.2d 92, 110, 640 P.2d 1061 (1982) ). Similarly, in State v. Winterstein, 167 Wash.2d 620, 636, 220 P.3d 1226 (2009), we rejected the federal inevitable discovery doctrine as "incompatible with the nearly categorical exclusionary rule under article I, section 7."
¶ 75 Important to the issue and facts represented here, in those cases and others cited in those cases, the evidence was obtained *77 contemporaneously with the constitutional violation. In Eserjose, though three separate opinions were authored, it appears no disagreement existed that if the confession had been contemporaneously with the illegal seizure, suppression would be required. State v. Eserjose, 171 Wash.2d 907, 927, 933, 259 P.3d 172 (Madsen, C.J., concurring), 936-37 (C. Johnson, J., dissenting), 171 Wash.2d 907, 259 P.3d 172 (2011). *904 ¶ 76 What these cases teach, and relevant to resolution of the issue here, is where evidence is obtained contemporaneously with the constitutional privacy violation, the attenuation doctrine does not apply and the evidence must be suppressed.
¶ 77 Importantly, we have largely rejected the attenuation doctrine under nearly identical material facts in State v. Rojo Armenta, 134 Wash.2d 1, 948 P.2d 1280 (1997). Armenta involved, similar to the facts here, an illegal seizure of the defendants and an otherwise voluntary consent to search a vehicle and its trunk where evidence was found, after advising the defendant he could refuse to consent. We reversed the conviction and held "consent, although voluntary, was tainted by the prior illegal detention." Armenta, 134 Wash.2d at 17, 948 P.2d 1280. In overturning the conviction, we emphasized because the officer did not have " 'specific and articulable facts' " that defendants were engaged in criminal activity at the time of the seizure and because the officer obtained consent "immediately after the detention and without the benefit of Miranda[2 ] warnings, [the consent] did not remove the taint of the prior illegal detention." Armenta, 134 Wash.2d at 17-18, 948 P.2d 1280. Likewise, in the present case, the officer received John Mayfield's consent to search the truck immediately after what the State concedes was an illegal seizure.
¶ 78 Although Armenta purportedly relied on a Fourth Amendment analysis and not article I, section 7, that federal foundation seems somewhat shaky. However, its reasoning and language is consistent with our article I, section 7 cases, which should be expressly recognized. The federal attenuation doctrine should be rejected in circumstances where the evidence is obtained contemporaneously with the constitution violation. As amici point out, the attenuation doctrine "denies a remedy even as it concedes a *905 constitutional violation." Br. of Amici Curiae[3] at 13. This is not consistent with our constitution's strong protection of privacy rights and our "nearly categorical" exclusionary rule. Winterstein, 167 Wash.2d at 636, 220 P.3d 1226. We should reject the attenuation doctrine.

State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808 (1986).

Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Amici Curiae include the American Civil Liberties Union of Washington, Fred T. Korematsu Center for Law and Equality, Washington Association of Criminal Defense Lawyers, and Washington Defender Association.